Calamine III is not only a visionary but also controversial, and his martyrdom left the Apotex Incorporated against Xenophe, Syntha-Mavone and others. Mr. Chastain. Good afternoon, Your Honor. It's Bruce Chastain for Apotex, Inc. and Apotex Corp. There are basically two main issues in this case. Number one, did the district court properly apply the glitch decision, this court's glitch decision? And the second main issue is whether the district court misapplied the Professor Borchardt factors for determining whether a declaratory judgment is appropriate. Now, I'm going to address the glitch decision. Could you tell us how your case differs from the glitch decision? Absolutely. First of all, the glitch declaratory judgment plaintiffs sought leave to amend six years after the liability trial. That leave was denied, then they had the damages trial, then they filed the D.J. case. So what the glitch plaintiffs were doing was using a declaratory judgment act to attack a verdict that had already been rendered. We are not doing any such thing. That's even worse. That's even worse, isn't it? From the perspective of where you're standing, you're challenging the trial court's determination of whether or not you could amend your complaint, and they denied it, which is discretionary. You're still subject to appeal on that. You still have the right to appeal that denial. Yes, we do have the right to appeal, and we're all agreed on that. However, the issues of inequitable conduct that we want to raise in our declaratory judgment complaint are so intimately intertwined with the obviousness issues in the infringement case and also with the other inequitable conduct issues that we feel quite strongly that these matters should be tried together, that it would be sound judicial administration to try these matters together. And that is why we suggested to the court that the cases should be consolidated. Now, one of the things that... But he's already denied your amendment. Yes, he has. So why don't you just keep it on appeal? You still have the right to appeal that. You still have the same rights at that point without that judgment action being filed. Isn't this really a hand-around run against the judge's determination of denial of the amendment? Your Honor, while it could be viewed that way, we don't think it is. We think Title 28 entitles us to our day in court on this claim. Sanofi has said in its pre-trial brief in the infringement case that they knew, they knew before they filed in the U.S. that Claim 2, the clitoral hydrochloride, was an unstable compound, that it would degrade, that it's not a pharmaceutically acceptable salt. They never told us that the patent was. Now, the fact is, Judge, that... When did you discover that? Let me say this. I'm glad you asked that because it's an important question. I was the attorney who did most of the pre-trial work, and my focus was primarily on the biological difference of enantiomers. And most of the inequitable conduct allegations refer to that. Now, at the very end of the expert depositions, I was reviewing materials for the pre-trial order, and it dawned on me that there was this additional allegation regarding the instability of the salt that Sanofi claims is so special. And I think it's quite like the situation in Foman v. Davis where the... But that claim's not ensued, is it? Pardon me? The hydrochloride. I mean, when you say that that claim is so special. Yeah, well, that is correct. But the claim is not ensued. They are alleging infringement of Claim 3, and maybe we had tunnel vision about Claim 3 for a while. But the fact is they are alleging that Claim 3, the bisulfate salt, is so special and so unexpectedly superior to the hydrochloride that it's unobvious. And the other side of that point is, why didn't you tell the patent examiner... The hydrochloride is not in the prior art, is it? The subject matter of Claim 2? Well, you're not saying that that subject matter is in the prior art. No, that's not... Why do I have to show that the subject of Claim 3 is superior to the subject of Claim 2? Well, in the prior art, there's a racemate, which is a hydrochloride salt in the prior art. And, you know, there is an issue in the case as to whether the bisulfate of the enantiomer is unexpectedly superior to the hydrochloride of the enantiomer. But are you saying that you are precluded from bringing out whatever evidence you might want to bring out in connection with, I suppose you're talking about obviousness, because you weren't permitted to bring this, to amend your complaint at this stage? Well, it's Sanofi that wants to introduce the evidence of the superiority of the bisulfate salt compared to the hydrochloride salt. And you're saying that you're barred from challenging that if you're not permitted to amend the complaint with respect to inequitable conduct? We have a motion in limine pending which does make an argument to that effect because the examiner was never told about the unsuitability and the instability of the hydrochloride salt, and yet it is claimed. So this information was concealed from the examiner, and we don't think that Sanofi should be permitted in the infringement case to rely on the superiority of the bisulfate salt compared to the hydrochloride. What I'm trying to understand is whether not permitting you to amend the complaint at this stage is going to seriously, adversely affect the evidence that you can produce on whatever substantive issues are involved. Well, we're going to offer the evidence anyway, Your Honor. The reason we would offer it is because we think that, certainly with respect to all the inequitable conduct allegations, we have to prove clear and convincing evidence on intent. And the more evidence we have, and we think we can offer this under Rule 404B, because it's evidence of intent. And so the evidence is in the case anyway, but we want to have our claim heard on the merits. At the end of the day, the district judge has to look at all the allegations of inequitable conduct, he has to weigh materiality and intent, and he has to find out that we prove it by clear and convincing evidence. The more that we can put in on that, the stronger our case. And also, as we pointed out in our reply brief, Your Honor, this is, we are the first filer under the Hatch-Waxman Act. We have been approved for the first generic, and as the first filer, we get the 180 days exclusivity. We have raised the possibility, we never know how litigation is going to turn out, we've raised the possibility that in the event that this is the only inequitable conduct allegation that the district judge would find clear and convincing, we'd be precluded from presenting it in the infringement case. And therefore, some other generic company might be able to, as a latecomer, might be able to come in and present this before us and basically steal our thunder even though we're the first filer. Mr. Jason, you do have a right to amend your complaint. You can renew your motion to amend your complaint even when all the evidence is in. The judge can reconsider that particular motion at that point in time. So is that really an opportunity for you to do it again at that time? I think you're referring to Rule 15b? Right. We certainly would keep that option open. Well, you have it. I think we're going to get resistance. Oh, I'm sure you will, but that's still going to be up to the judge at that particular point in time. It's discretionary. So you put all the evidence into the record, and at that time you renew your motion to amend the complaint again and include all of your theories of inequitable conduct. Here's why that might not work, because we have already submitted to this side our expert reports. The other side has had them for over a year, and they haven't had to answer them because we haven't been allowed to plead them. But I think that Mr. Cheslin might argue that, well, since we didn't have expert reports to respond to Apotex's case, that they should not be permitted to amend under Rule 15b. So I know I'm going to get resistance on that. Well, those are all vagaries of trial. That's right. That happens all the time. Yes, I agree. So I don't disagree with your attempt to do it, but I think it's really kind of a situation where you're looking at an incomplete record, and until the judge has a complete record before the court, it's really going to be an earlier-than-necessary Malacca-Curry type of a proposition, isn't it? It's almost like a 1292b type of a request. Pardon me? A 12? An interlocutory request. Well, we don't view it that way, Your Honor. We think Title 28 entitles us to bring this case. We are accused of infringement. We think there's a valid and equitable conduct claim here, defense, and we ought to be able to present it. The Supreme Court has said many, many times that the public interest in having an equitable conduct and invalidity determined is paramount. Mr. Chase, let me ask you this. First, I have two questions. One is sort of a housekeeping question. I saw in the briefs, and correct me if I'm wrong, a reference to the fact that trial was supposed to begin April the 3rd of 2006? Yes. Did that happen? We got a notice, I think, yesterday. Yes, I sent a letter yesterday. The judges put it back to June the 12th. Oh, all right. I didn't see that. But let me ask you the other question. What is the nature? You allege that there was an error, I think, in the judge's denial of your motion to amend the complaint, correct? Yes. That's not on appeal here, but I'll be happy to answer your questions. I understand. But I think it may tie in in one respect. And you say that that was clearly an error, and I think what really makes this acute, I think, in your view, is what you referred to when you were speaking a moment ago. In fact, this is a hatchwack in that case, right? Yes. What about don't you have, if it's that serious a problem, theoretically don't you have the option of a mandamus petition? Or didn't you have? Or don't you in that proceeding? Well, my understanding of mandamus is it applies to a nondiscretionary duty. And under Rule 15A, the judge has discretion, so I don't think mandamus applies. Theoretically, if one took the position that there was such a gross abuse of discretion. So you're saying you don't see a mandamus petition as even theoretically a viable option? It's not something that I would have thought of, because I think that Rule 15A speaks in terms of discretion. Okay. So, but I thank you for the suggestion. Well, no, the question in terms of because it relates to whether, you know, it relates to whether you have no alternatives, and how dire your present situation is, I suppose. We were very surprised by Judge Stein's ruling, because we asked for leave to amend three months. A couple of leaves, a couple of motions to amend have been granted, correct? Yes, with consent. And this one was really an add-on to the third motion, some of which Sanofi consented to. Then they were opposing the Antitrust Council, and they changed their mind. But anyway, we were still three months before submission of the pretrial order. Then there would be motions to eliminate. We were way, way ahead of a trial date when we asked leave to amend. So we were quite surprised by the judge's refusal to allow us to amend. We don't think it was appropriate. Do you want to save your better time? Pardon me? Do you want to save your better time? Yes, yes, I do. Thank you. Okay. Mr. Chesler. May it please the Court, my name is Evan Chesler. I represent the appellees. Let me first turn to the Glitch case, Your Honors. This is procedurally the same, and I respectfully correct one thing Counsel said about Glitch. As is apparent on the very first page of this Court's decision in Glitch, the liability phase of the case had been tried. The damages phase had not been tried. There was no final judgment in the case. It went on for quite a long time, admittedly, but the case was still pending before the district court. And the stage at which the effort to amend to add the patent misuse defense was made goes entirely to the question of whether the district court properly exercised its discretion in denying that motion, which is not an issue before this Court. Isn't the key thing, Mr. Chesler, I guess from your standpoint, what you would say in Glitch, you would acknowledge that obviously the facts are different, but you would say I guess it's what's critical about Glitch from your standpoint is the pronouncements the Court made in the opinion. Absolutely, Your Honor. I couldn't agree more. It was absolutely clear. The Court said there were very, very fundamental policy questions involved, and namely that issues relating to a single case are litigated in that case that matters are raised to challenge the judgment after a final adjudication of a case on appeal, etc. All of those policy considerations apply with at least equal force here. They have, if they lose below, an appeal to this Court as a matter of right. That is the time. And I also respectfully disagree with counsel about his answer to Your Honor's question about a petition for writ of mandamus. I'm not at all inviting such a writ. I think it would be ill-advised. But if they genuinely believed that the Court had grossly abused its discretion in refusing to allow them to file a fifth answer and counterclaim, fifth, after they had already filed four and after all discovery in the case was closed, if they really believed that that was an abuse of that Court's discretion, then they absolutely should have been here with a petition for writ of mandamus. I've filed them on occasion in my 30 years. I don't like to do it, but I've done it a few times. And of course it applies in situations where you're saying it's at least a theoretical possibility. It is not only a theoretical possibility. If they genuinely believed in what they were saying, it was a real possibility. They didn't do it. They chose not to wait for appeal. They did exactly what Koch Engineering did in the glitch case. They attempted to do an end run. They attempted to do exactly what the trial court said they were doing. The trial court characterized this declaratory judgment action as a procedural maneuver. That's exactly what it is. If they were to convince this Court to override the glitch case, then what would happen in the district court is you could keep tossing in new counterclaims through the life of the case. Professor, what about this? We're jumping in on you, but we have time that's fleeting. Yes, sir. Let me ask you, what is your—Mr. Chasen makes the comment, he said, well, one distinction with glitch is that this is a Hatch-Waxman case, and this presents a particularly acute situation, he would argue. What is your response to the fact that you're in a Hatch-Waxman arena? Yes, let me respond to that, Your Honor. That's what they refer to as their important right issue in their appeal. My answer is there is no such important right. Let me start with what glitch said. In glitch, the appellant made exactly the same argument. In that case, they said it was the important right to make patent misuse arguments, and they were being deprived of making a patent misuse argument. And what this Court said was the policies that underline Rules 8, 13, and 15 far outweigh any alleged important right and said, wait for your appeal. If you're right and the judge is wrong, we'll take care of it when that time comes. More importantly, this conjured-up argument that their 180 days of semi-exclusivity is somehow at risk is absolutely fanciful, and let me tell you why, Your Honor. First, no generic company has even alleged this ground of inequitable conduct, let alone is in jeopardy of litigating it ahead of Apotex. No one. The case is going to trial in June. No one has even made the allegation. Second, suppose from out of the sky a generic company suddenly dropped down, made the allegation it has not made, miraculously tried that issue ahead of Apotex, and miraculously got to this Court and had their position affirmed ahead of Apotex. What would happen under the hatch-waxman-stache in that event? Those are a lot of miracles. Those are a lot of miracles. A lot of miracles. And what would happen in that event, Your Honor, is they wouldn't lose their 180 days, as they well know because they just litigated this issue in the district court here in Washington in a case called Apotex against the FDA. If that happened, it would trigger their 180 days as the first filer. So far from some loss of an important right, they would simply have the right to go on the market sooner than they would if they litigated against us under that hypothetical. Because they were first in line. Because they were first in line, and that priority isn't lost. They literally just litigated this question in Apotex against FDA before the district court here in Washington, and that's what the court held. Moreover, what they don't tell this court is, they have 180 days of priority under two of our patents. A second patent on which we did not sue them, because they do not appear to infringe it, is a polymorph patent. They have priority on that patent. And as again, they argued, remarkably, this is the biggest miracle of all to me, they argued against this position in the FDA case. They said the FDA position should be one period of priority for every drug, not one for every patent. And they lost that issue. So in fact, they have two 180-day bases for priority in this case. And someone, this nonexistent generic, would not only have to get to this court first on an issue they haven't even pled, let alone tried, somebody would have to knock out the other patent in order to eliminate this particular generic company's 180 days. There is absolutely no basis in this record to conjure up that possibility, this important right which is supposedly at jeopardy. I would respectfully submit the right to litigate patent misuse in the Glitch case was a more real and concrete right which this court saw fit to override in the face of the policies that underlie the rules of civil procedure than this particular important right could ever be. And by the way, if they really thought they were in a race to get this issue litigated first, then why did they go to the district court two weeks ago and get a ten-week continuance of the trial? Their letter to the court failed to point out that it was their scheduling conflict, not ours. They made the request. All we did was not object to their request for a continuance of the trial date. And the judge gave them the exact trial date they asked for, June the 12th. So if they thought they were in a horse race, why are they slowing down? Why did they ask for more time? Because there is no horse race. There's nobody against whom they're racing. Nobody else has raised the issue. Let me turn, if I may, just quickly, I have a few minutes, to the so-called Dow Jones factors. And those are the factors that relate to whether or not a district court has properly exercised its discretion in dismissing or not dismissing a declaratory judgment action. The first factor is whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved. The legal issue involved has already been resolved. The judge denied their application for a fifth answer and counterclaim. If this court ultimately disagrees with him, you will reverse him, and it will be tried on remand. If they win below, it will be moot and never be raised. There is no outstanding issue to be resolved. Similarly, with respect to the second factor, it's a question of whether the judgment, the declaratory judgment, would finalize the controversy and offer relief from uncertainty. There is no uncertainty. The matter was submitted to the trial court and decided. In all of the cases they cite in which these factors are applied favorably to allow a declaratory judgment action to proceed, it's because there is no other action in which this issue can be litigated. Here there is an action. It's the case that's going to trial in June before Judge Stein. But the uncertainty is to claim two, and as to whether in fact whatever transpired with respect to claim two, their argument is that they may not be permitted to raise that information. Well, Your Honor, we haven't sued them on claim two. We've only sued them on claim three. That's why they may not be permitted. That's, I gather, why they want to raise it as a matter of inequitable conduct. Well, and Your Honor, if they had raised it in a fashion that the district court deemed to be timely, and he had granted their motion to amend, they could raise it. And if this court believes at the end of the day that the judge was wrong in not letting them do it, then you will remand it to him and tell him to do it. But that is not, with all due respect, a justification for them to run roughshod over Rule 8, Rule 13, and Rule 15. We live in our legal system by rules. We have to obey the rules. Rule 8C says if you have an affirmative defense, you shall plead it. Rule 13A says if you have a compulsory counterclaim, you shall plead it. Rule 15A says you are entitled to amend only on leave of court or by consent of the adverse party. They didn't plead it as an affirmative defense. They didn't plead it as a compulsory counterclaim. They did not get our consent, and they asked for and were denied leave of court. Their answer is to say, well, we tried that. It didn't work. I'll go two steps to the left, file a declaratory judgment action, put it in front of the judge, have him dismiss it, and get what amounts to an interlocutory appeal. What if the evidence was not available until after discovery or during discovery? Your Honor, then they would have been making a supplemental motion, not a motion to amend. In fact, as they admit, they had the evidence all along. There wasn't any new evidence. This was, in their own words before the district court, a theory that, quote, gelled, gelled after the close of discovery in a case they've been litigating for over four years. There isn't a litigant in the world who wouldn't have an excuse if that's enough. What you'd end up with is whenever something gels in my head, I can file a motion to amend and dare the court to deny it, to control its own docket and say four pleadings was enough. I'm not going to permit a fifth. No problem. You're not foreclosed. Just file a declaratory judgment action and consolidate it, and the judge has to do it. And if he dares to dismiss that as an end run in light of square on all four corners authority in this court, take him up to the court of appeals and get him reversed. So, in my view, it could conceivably have made a difference because it would have been a motion to supplement and not amend. It's not this case, Your Honor. They had the evidence all along, and they admit that. Which leads me to the last two factors, if I may. The third factor under Dow Jones is whether the proposed remedy is being used merely for procedural fencing. I have to say, in 30 years at the bar, I haven't seen procedural fencing quite like this. Five pleadings, and then you file a declaratory judgment action, and their argument is, oh, no, no, that's only if you're forum shopping. There isn't any support for that. The party in Glitch wasn't forum shopping. They did exactly what this party did. They filed a declaratory judgment action before the same forum. There's no basis to believe that it's only forum shopping. Under their theory, if they had gone to Texas and filed this declaratory judgment action, and I had gone to Texas and moved under 1404 of Title 28 to transfer it back to Judge Stein because he already had the prior case, and he took the case, and then he granted my motion to dismiss, then it would be procedural fencing. But now it's not because they didn't bother to take a 1,500-mile detour. They filed it in the same clerk's office. It would be exactly the same procedure, exactly what Koch Engineering did in the Glitch case. It would be equally inappropriate, which leads to my final point. And that is the last of the factors, which is whether there is a better and more effective remedy other than declaratory judgment. Of course there is. It's called an appeal. And that's exactly why they're not entitled to the declaratory judgment action because to do otherwise would eviscerate the rules by which we practice. That's why I believe, respectfully, this court decided the Glitch case the way it did. That's why Judge Stein decided this matter the way he did, citing the Glitch case, of which he was quite aware. And that's why if at the end of the day they have a claim, the place to assert that is here on appeal if they lose below, unless Your Honors have any more questions. Thank you. Thank you. Jason. Yes, Your Honors. In Koch and Solz's brief to this court in the Glitch case, they expressly state that the declaratory judgment action was filed after the damages trial. So it was after both the liability and the damages trial. Now I want to address the procedural fencing issue. The formulation that the courts take, if it's merely for procedural fencing, either a race to the courthouse or form shopping, then it's improper. We are not form shopping. We went to the same judge in the same venue. We're not doing any race to the courthouse. We want to be heard in the same trial. There's been no trial yet. Your Honor said, I believe, in the Genentech case, which is one of your decisions, Your Honor, that you wrote that consolidation is an appropriate consideration for considering a declaratory judgment action. And Rule 42 provides for it. Judge Stein seemed to take umbrage because we suggested consolidation. But it's provided for in the rules. What we did was appropriate. Regarding the issue of Mr. Chesler, excuse me, refers to the letter to the court, Your Honor, I'm surprised to hear him say what he said. Mr. Silver, my co-counsel, is lead counsel for Apotex. And he has another trial in front of Judge Jones. This was thoroughly discussed with everybody. The Fitzpatrick firm is involved. Everybody agreed. We went to Judge Stein. And everybody agreed to the postponement. And he granted it. What's your response to the arguments Mr. Chesler makes with respect to the Hatch-Waxman factor in this case? And you heard what he had to say about that. Well, I'm a little bit disadvantaged because I'm not familiar with some of the things that he referred to, Your Honor. I'll be very candid with you. And I can't answer that. But there are many, many generic companies out there. Any one of them can read these briefs and see that Sanofi— I mean, you heard what he said. He said it doesn't make any difference to you if, quote, somebody drops out of the sky. It doesn't make any difference to your client. I can't comment on that today, Your Honor. I wish I could, but I can't. I have two seconds left. I guess I'm done. Thank you very much. Thank you, Mr. Chesler. Mr. Chesler, I'll put our briefs under.